UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

**KEVIN MARK VON FELDT**

           Plaintiff,

v.

**KAMMI JANAE PEDERSON,**

           Defendant.

Case No. 24-CV-351

**JURY DEMANDED**

# COMPLAINT

Plaintiff, Kevin Mark Von Feldt ("**Von Feldt**" or "**Plaintiff**"), by his counsel, Richman & Richman LLC, by Claire Ann Richman and Michael P. Richman, as and for his Complaint against Kammi Janae Pederson ("**Pederson**" or "**Defendant**"), asserts as follows:

## PARTIES

1. Plaintiff, Kevin Von Feldt, is an adult resident of the State of Wisconsin who resides at N1138 Little Bear Road, Sarona, Washburn County, Wisconsin.

2. Defendant, Kammi Pederson, is an adult resident of the State of Minnesota who resides at 4581 320th Ave, Bejou, Mahnomen County, Minnesota.

## JURISDICTION AND VENUE

3. Federal jurisdiction is proper pursuant to 28 U.S.C. § 1332(a).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## FACTS COMMON TO ALL COUNTS

5. In May 2023, Von Feldt and Pederson commenced communicating through internet and telephone communications. As the relationship continued, they decided to meet in person.

6. On June 3, 2023, Von Feldt and Pederson met in person for the first time, and had dinner together at a restaurant in Mendota Heights, Minnesota. During that time, Pederson expressed strong emotional feelings for Von Feldt.

7. On June 30, 2023, Von Feldt and Pederson met again in Saint Paul, Minnesota, where they shared a meal and watched a movie.

8. Von Feldt invited Pederson to his home in Sarona, Wisconsin. Pederson visited Von Feldt there for the first time on July 28, 2023. Von Feldt extended this invite as a consequence of the emotional representations made by Pederson in May 2023 and at dinner in June 2023, and in other communications.

9. Pederson then stayed with her family in Bejou until Labor Day.

10. On September 10, 2023, Pederson again visited Von Feldt at his home and stayed the night.

11. Von Feldt and Pederson spent the following weekend together at the Grandview Lodge in Nisswa, Minnesota.

12. On October 13, 2023, Pederson again visited Von Feldt at his home. She stayed the entire weekend.

13. Throughout this time, the parties continued to communicate electronically and by phone on a regular and frequent basis. Pederson continued to express strong emotional feelings for Von Feldt.

14. Pederson was at all times feigning feelings and friendship for Von Feldt in order to further a scheme to deceive him into providing money to her or for her benefit.

15. During the month of October 2023, Pederson made representations to Von Feldt that she would cohabitate with him if he were willing to provide financial support for her. In fact, she had no intention to cohabitate with him, and made such representations solely to deceive him into providing her with money. In consideration of her feigned friendship, and her agreement to cohabitate with him, he began to provide her with $1,000 a week, beginning on November 1, 2023.

16. Von Feldt had spent two weeks cleaning out and preparing a room in his home for Pederson to call her own. He had spent another week making various other preparations and arrangements for Pederson to be able to stay comfortably at his home.

17. On November 3, 2023, Pederson moved into Von Feldt's home.

18. On November 7, 2023, Pederson suddenly departed, telling Von Feldt that she felt isolated from her friends in Minneapolis and that Von Feldt's home was "too quiet." As a result, Von Feldt and Pederson began making plans to move in together in an apartment in Minneapolis.

19.     Von Feldt made a total of seven weekly payments of $1,000 to Pederson, totaling $7,000, based on Pederson's representations to him. The last payment was made on December 11, 2023.

20.     In addition to the weekly payments, Von Feldt agreed to pay for substantially all the expenses they would thereafter incur together. Thus, he paid for substantially all of their expenses when they vacationed together in Los Angeles from December 3 to December 14, 2023. Von Feldt also paid for Pederson on other vacations and many other expenses. In addition, at her request and in unknowing furtherance of her scheme, Von Feldt also paid the travel expenses for a friend of Pederson to accompany her on one of these trips. Von Feldt agreed to these payments in consideration of Pederson's representations to him.

21.     On December 13, 2023, while Pederson and Von Feldt were vacationing on Malibu Beach, near Los Angeles, Pederson again suggested they move in together to an apartment in the Minneapolis area. She promised Von Feldt that she would do so if he provided her with ten thousand dollars ($10,000) for her asserted financial security (in addition to the $1,000/week he had already agreed to provide). Pederson had no intention to cohabitate with Von Feldt.

22.     On December 13, 2023, Von Feldt wired Pederson five thousand dollars ($5,000).

23.     Pederson represented to Von Feldt that she would make plans for them to view and then move into an apartment.

24. On December 19, 2023, Von Feldt and Pederson visited the Kellogg Square Apartments in Saint Paul, Minnesota, to view apartments. Pederson requested that Von Feldt provide the remaining $5,000 of the $10,000 payment she sought for her asserted financial security. While having lunch after the viewing, Von Feldt wrote Pederson a check for another $5,000.

25. The next day, Pederson sent Von Feldt messages making extensive plans to view more apartments beginning January 3, upon her return from an out-of-town holiday trip with her family, and to move in the following weekend. Pederson represented to Von Feldt that she was not satisfied with the apartment they had viewed the day before and did not want to "rush into" choosing an apartment. She had no such intention; however, and her "plans" to view more apartments were simply another part of the scheme she intended to continue to deceive Von Feldt until after the $5,000 check cleared. She planned to terminate their relationship as soon as the check cleared.

26. On January 2, 2024, Von Feldt sent a text to Pederson to confirm that the two were still viewing apartments the next day. Pederson responded that they were. However, she never appeared. That night, Pederson sent a text telling Von Feldt that she was terminating the relationship. Pederson never intended to view additional apartments with Von Feldt.

27. Pederson had determined long before January 2, 2024, to end her relationship with Von Feldt, but deliberately delayed doing so, while providing false assurances to Von Feldt that they would cohabitate, in order to falsely induce him to

provide her with the balance of the money she had requested for her promise to cohabitate with him, as well as other support. Before terminating the relationship, on that same day, January 2, 2024, Pederson sent Von Feldt's son a text asking to talk and stating that she intended to end her relationship with Von Feldt, writing: "[p]lease don't tell [Von Feldt] I've messaged you just yet. Pleaseeeeee [*sic*]. This is so important I cannot stress how important it is that this is kept from him for the time being."

28. After the relationship was terminated, Von Feldt demanded the return of the monies he gave Pederson. Pederson ignored all further communications from Von Feldt.

29. Pederson deliberately manipulated and lied to Von Feldt.

30. Pederson's actions caused Von Feldt to suffer intense emotional turmoil, stress, and impairments to his health. This emotional turmoil caused thoughts and acts of physical self-harm.

31. Shortly after the rejection by Pederson, Von Feldt attempted to end his life, but his adult children intervened and he received treatment. Von Feldt continues to receive counselling treatment for the damages caused to him by Pederson.

32. On January 8, 2024, Von Feldt submitted a police report, seeking to press charges against Pederson for defrauding him of $10,000.

33. Including the $10,000 payment for Pederson's asserted financial security, Von Feldt was induced to pay to Pederson, or for her benefit, at least an

additional $7,000, plus the expenses for her and her friend's airfare, clothing, and other expenses of at least $3,300.

34. Subsequently, Von Feldt incurred costs of investigation and litigation of at least $25,000.

## COUNT 1
## BREACH OF CONTRACT

35. Von Feldt adopts and re-alleges the foregoing paragraphs as if restated herein.

36. Pederson promised to cohabitate with Von Feldt in exchange for his payment to her of $10,000, plus weekly payments of $1,000, and payment of other expenses to or for her benefit when they would travel together.

37. In exchange for her promise, and in the expectation of her performance of their agreement, Von Feldt agreed to pay and paid Pederson $17,000, and at least an additional $3,300 on travel expenses, clothing, and related expenses for her and a friend.

38. By exchanging mutually dependent promises, the parties formed a contract (the "**Contract**").

39. Von Feldt performed his Contract obligations.

40. Pederson failed to perform her Contract obligations and breached the Contract by terminating the parties' relationship without just cause and failing and refusing to cohabitate with Von Feldt.

41. Accordingly, in consequence of her breach of the Contract, Pederson is liable to Von Feldt for $20,300, plus consequential damages for emotional distress and harm.

## COUNT 2
## UNJUST ENRICHMENT

42. Von Feldt adopts and re-alleges the foregoing paragraphs as if restated herein.

43. Pederson made representations to Von Feldt about her feelings for him, their relationship, and her intention to cohabitate with him ("**Relationship Representations**").

44. In consideration of Pederson's Relationship Representations, Von Feldt provided to her $17,000, plus travel, clothing, and other expenses to her or for her benefit of at least an additional $3,300.

45. All of Pederson's Relationship Representations were made in order to induce Von Feldt to provide the foregoing payments.

46. Pederson did not continue the relationship with Von Feldt nor did she cohabitate with him. She terminated their relationship.

47. In the circumstances, it is unjust and inequitable for Pederson to retain any of the funds provided to her by Von Feldt.

48. Pederson accepted funds and did not provide the consideration for the funds. Pederson has been unjustly enriched.

49. Accordingly, Pederson is liable for the return of all such funds, of at least $20,300, to be determined on trial.

## COUNT 3
## THEFT (FALSE REPRESENTATION)

50. Von Feldt adopts and re-alleges the foregoing paragraphs as if restated herein.

51. Pederson's Relationship Representations to Von Feldt were false when made.

52. Pederson knew that her Relationship Representations to Von Feldt were false when made.

53. Pederson made the Relationship Representations with the intention to deceive and defraud Von Feldt.

54. Pederson obtained at least $20,300 in cash or benefits from Von Feldt as a direct consequence of her false representations.

55. Von Feldt was deceived and defrauded by Pederson's false Relationship Representations.

56. Under Wis. Stat. § 895.446(3), Pederson is liable for actual damages, all costs of investigation and litigation that were reasonably incurred, as well as exemplary damages of up to three times the actual damages awarded.

57. In consequence, Pederson is liable for at least $60,900, plus costs of investigation and litigation of at least $25,000, and such further amounts as well be established in trial.

## COUNT 4
## FRAUD

58. Von Feldt adopts and re-alleges the foregoing paragraphs as if restated herein.

59. Pederson's Relationship Representations were knowingly false.

60. Pederson made such representations with the intent to defraud Von Feldt and induce him to give to her or for her benefit at least $20,300.

61. Von Feldt reasonably relied on Pederson's false representations, and as a result was defrauded, and suffered economic damages, plus damages from extreme emotional turmoil that resulted in thoughts and acts of self-harm.

62. Pederson is therefore liable for at least $20,300 for the damages Von Feldt incurred as a result of her fraudulent misrepresentations, plus all consequential damages in an amount to be determined at trial, and exemplary damages allowed pursuant to Wisconsin law.

## COUNT 5
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

63. Von Feldt adopts and re-alleges the foregoing paragraphs as if restated herein.

64. Pederson knew that making false Relationship Representations, in order to induce Von Feldt to make the foregoing payments, would cause Von Feldt emotional distress.

65. Pederson knew that Von Feldt was susceptible to manipulation and likely to suffer emotional distress because of his age and disposition.

66. Pederson's conduct was the direct cause of Von Feldt's emotional distress and damage to his health, including acts of self-harm.

67. As a result of Pederson's actions, Von Feldt has been unable to maintain relationships with his family and suffers from regular thoughts of acts of self-harm.

68. Pederson is liable for the damages to Von Feldt of at least $75,000 as a result of Pederson's infliction of emotional distress, in an amount to be determined at trial.

## COUNT 6
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

69. Von Feldt adopts and re-alleges the foregoing paragraphs as if restated herein.

70. Pederson's emotional manipulation and financial exploitation of Von Feldt, taking advantage of his age and vulnerability, and the harsh manner in which she terminated the relationship, fell below the standard of care a reasonable person would use in similar circumstances.

71. Von Feldt suffered extreme emotional distress which resulted in thoughts and acts of self-harm as well as damage to Von Feldt's personal relationships.

72. Pederson's actions were the direct cause-in-fact of these injuries.

73. Pederson is liable for damages to Von Feldt of at least $75,000 incurred as a result of Pederson's infliction of emotional distress, in an amount to be determined at trial.

**WHEREFORE**, Defendant prays for relief and judgment as follows:

A. Entry of judgment in Defendant's favor against Pederson for actual damages in an amount not less than $20,300 under Counts 1-4.

B. Entry of judgment in Defendant's favor against Pederson for actual damages in an amount not less than $75,000 under Count 5 and Count 6.

C. Entry of an order pursuant to Section 895.446(3) of the Wisconsin Statutes for actual damages of $20,300, at least $75,000 emotional distress damages, reasonably incurred investigation and litigation costs of $25,000, and exemplary damages of three times the amount of actual damages awarded.

D. Entry of an order granting reasonable costs, expenses, and attorney fees allowed by law; and

E. For such other and further relief as the Court deems just and equitable.

Dated this 24th day of May, 2024.


**RICHMAN & RICHMAN LLC**
Attorneys for Plaintiff Kevin Von Feldt


by: *Electronically signed by Claire Ann Richman*
Claire Ann Richman, SBN 1020942
Michael P. Richman, SBN 1105569
122 W. Washington Ave., Suite 850
Madison, Wisconsin 53703-2732
Tel: (608) 630-8990; Fax (608) 609-8991
crichman@RandR.law
mrichman@RandR.law